The words spoken were, "he committed a misdemeanor in the State of North Carolina, for which he was arraigned and tried for his life," that "he was arraigned at the bar in the State of North Carolina, and I will show it in black and white."
The declaration then proceeded to state that there was an election to be held for Lieutenant-Colonel Commandant of the county of Dickson, that the words were spoken with a view to injure the plaintiff in his election and good name, per quod many voters refused to vote for him.
A witness, having been called, was asked what effect the report had upon the election.
The question was objected to.
But one case respecting an election is recollected at present, which is in Lord Raymond's Reports, and that as well as can be recollected was a suit brought by a freeholder whose vote was refused.
That was with respect to a member of parliament, but no difference in principle can be perceived in the case. The loss of an election in both cases must be *Page 100 
conceived injurious, for which the law will afford redress. If it were an injury to the voter to be deprived of his vote, tending to the loss of his favorite candidate, it would surely be an injury to that candidate to be deprived of votes by defamation.
The heart which is nourished by the blood issuing from the wounds of mangled reputation ought to be mended by the wholesome correction of law, if neither moral nor religious precept can effect it.
The rule as to evidence seems to be, that a witness must generally depose as to his knowledge of facts. In some cases, however, evidence of common reputation is received; this case, however, is believed to be one not of the kind; the witness ought to state whether to his knowledge or belief, founded on reasons offered, the report was the cause of the plaintiff's losing votes, and how many.
Two witnesses were offered by the defendant for the purpose of showing that one of the plaintiff's witnesses had acknowledged he had received money of the plaintiff for swearing for him.